UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 16, 2006[*]
Decided August 17, 2006

**Before**

Hon. THOMAS E. FAIRCHILD, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-4446

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| *v.* | |
| LAWRENCE D. HOWARD, *Defendant-Appellant.* | No. 1:98CR00102-001 |
| | Larry J. McKinney, *Chief Judge.* |

**O R D E R**

The district court revoked Lawrence Howard's supervised release and ordered him to serve 14 months' imprisonment (with no further supervised release) after finding that he violated two conditions of his release. First, Howard failed to notify his probation officer within 72 hours after he was arrested on several state charges including possession of cocaine; second, he submitted a urine sample that tested positive for cocaine. On appeal Howard admits that he did not report the

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

arrest to his probation officer, but he argues that the district court erred in considering the positive urine test because, in his view, the preponderance of the evidence supports his claim that he did not "willfully ingest" the cocaine. We affirm.

Howard was originally indicted on two counts of counterfeiting United States currency, *see* 18 U.S.C. §§ 471, 473; these activities came to light when he was robbed during an attempted drug deal, and police caught one of the robbers with some of his counterfeited notes. He was initially released on his own recognizance but was reincarcerated for violating his pretrial release by, among other things, possessing cocaine. He claimed that the cocaine was "planted" in his car.

After pleading guilty to the counterfeiting charges, Howard was sentenced to concurrent terms of 35 months' imprisonment and three years' supervised release. He began serving his terms of supervised release in December 2003. In May 2005, his probation officer conducted a random urine test that came out positive for cocaine; a second test administered a few days later was indeterminate because the urine sample was diluted. Howard's probation officer petitioned for revocation of his supervised release in part based on the results of these tests, which Howard did not challenge. Rather than revoking his supervised release, however, the district court chose to modify it, merely requiring that he participate in a program of testing or treatment for substance abuse and cooperate in other ways with his probation officer.

Two months later, Howard's probation officer again sought revocation of his supervised release, this time because he failed to inform his probation officer that he had been arrested and because he failed a second drug test. At his revocation hearing, Howard claimed that he failed both the drug test at issue and the earlier one because a disgruntled employee in his construction business had given him cans of Pepsi spiked with cocaine. He supported this claim by calling two witnesses. The first was another former employee who testified that he saw the disgruntled employee place a white powder in Howard's Pepsi can without his knowledge sometime around the date of the first "dirty drop." The second witness was Howard's wife; she testified that a "mutual friend" told her that the disgruntled employee was angry at Howard and vowed to "make sure he never passed another drop." Howard then claimed that the same employee gave him a Pepsi on the day before his second positive drug test, and asked the district court to infer that the employee had spiked his drink again. The district court disbelieved his story, however, finding it incredible that he could "drink a Pepsi twice with cocaine in it and not know it."

On appeal Howard argues that the district court's credibility finding was flawed because it relied on an incorrect factual assumption—that he should have

been able to taste the cocaine.  He devotes much of the argument in his appellate brief to a purported "proof" that cocaine and caffeine (which Pepsi normally contains) are indistinguishable by taste.  The government objects on the ground that Howard failed to present any evidence to support this theory in the district court.  But the argument is not worth pursuing so far.  The district court never suggested that its credibility finding was contingent on whether Howard could *taste* the cocaine.  Howard sought to make taste an issue in the district court: he protested that he did not know what cocaine tasted like and that the drink had been too cold for him to taste it properly.  But the district court declined his invitation because it found his story incredible "[i]n any case."

Because the district court's decision was based on Howard's credibility, he cannot prevail.  Our standard of review of the district court's factual findings is clear error, and we have held that determinations of witness credibility will "virtually never" meet that standard because of the deference we owe the district court's live witness assessments.  *See United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005) (internal quotation marks and citation omitted).  Any argument that a preponderance of the evidence is otherwise lacking is similarly foredoomed.  Even a single positive drug test may support an inference of possession. *See United States v. Trotter*, 270 F.3d 1150, 1153 (7th Cir. 2001).  Howard's attempt to overcome the inference was not compelling, and, moreover, the record is replete with links between him and cocaine.

AFFIRMED.